# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FREUDENBERG HOUSEHOLD          )
PRODUCTS LP                    )
                               )
    Plaintiff,          )
                               )
v.                             )      No.  06 C 399
                               )
TIME INC. and KAMINSTEIN       )
IMPORTS, INC.,                 )
                               )
    Defendants.         )


## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

    This matter is before the court on Plaintiff Freudenberg Household Products LP's ("FHP") motion for a preliminary injunction.  For the reasons stated below, we deny the motion for a preliminary injunction.


## BACKGROUND

    FHP alleges that it develops, manufactures, and sells a line of household cleaning tools.  According to FHP, since 1977, FHP or its predecessor in interest has been advertising and selling a line of household cleaning products ("O-Cedar line") that bear the name "O-Cedar" and the phrase "Makes Your Life Easier."  (Compl. Par. 10-11).  FHP claims that after it started advertising and selling the O-Cedar line,

Defendant Time, Inc. ("Time") began publishing a women's lifestyle magazine entitled "Real Simple," which bears the phrase "Life Made Easier" on its cover. (Compl. Par. 18). FHP also contends that Time recently licensed Kaminstein Imports, Inc. ("Kaminstein") to use the phrases "Real Simple" and "Life Made Easier" in connection with the sale of a line of cleaning tools that includes mops and brooms. (Compl. Par. 19). FHP claims that Defendants' use of FHP's marks in connection with the line of cleaning products has caused confusion amongst consumers, making it difficult to distinguish between FHP's products and Defendants' products. FHP includes in its complaint a trademark infringement claim alleging a violation of 15 U.S.C. § 1114 of the Lanham Act ("Section 1114"), 15 U.S.C. § 1051 *et seq.* (Count I), a Lanham Act false designation of origin claim alleging a violation of 15 U.S.C. § 1125(a) of the Lanham Act ("Section 1125") (Count II), an Illinois Deceptive Trade Practices Act ("IDTPA"), 815 ILCS 510/1 *et seq.*, claim (Count III), a common law unfair competition claim (Count IV), a Lanham Act dilution claim alleging a violation of Section 1125 (Count V), and a Lanham Act contributory infringement claim (Count VI). FHP has moved for a preliminary injunction in this action and both FHP and Defendants have requested that this court rule based upon the documents and exhibits filed in this matter, rather than conducting a preliminary injunction hearing.

**LEGAL STANDARD**

A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Goodman v. Illinois Dept. of Financial and Professional Regulation*, 430 F.3d 432, 437 (7th Cir. 2005)(stating that "[a]s the Supreme Court has observed, "[a] preliminary injunction is an extraordinary and drastic remedy")(quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997)).  In order to obtain a preliminary injunction, a plaintiff must show that: "(1) [the plaintiff] ha[s] a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) [the plaintiff] will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Goodman*, 430 F.3d at 437.

## DISCUSSION

### I. Likelihood of Success on the Merits

FHP argues that it has a strong likelihood of success on the merits. To determine whether a plaintiff has a likelihood of success on the merits, the court must assess whether the plaintiff has "a greater than negligible chance of winning . . . ." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002)(stating that "[a] party with no chance of success on the merits cannot attain a preliminary injunction").  In addition, the court should use a "sliding scale" approach when considering potential harms to the parties, and the required showing

by the plaintiff for the likelihood of success on the merits can be lessened if there is "a greater predominance of the balance of harms." *Id.* (stating that "[i]n performing this balancing, the court bears in mind that the purpose of a preliminary injunction is 'to minimize the hardship to the parties pending the ultimate resolution of the lawsuit'").

### A. Trademark Infringement Claim and Related State Claims

FHP contends that it has a strong likelihood of success on the trademark infringement claims (Counts I and II), the IDTPA claim (Count III), and the common law unfair competition claim (Count IV). A trademark is defined to include "any word, name, symbol, or device, or any combination thereof [used by any person] to identify and distinguish his or her goods, including a unique product, from those manufactured and sold by others and to indicate the source of the goods, even if that source is unknown." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001)(quoting 15 U.S.C. § 1127). There are five types of trademarks that are categorized in "ascending order of distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful." *Packman*, 267 F.3d at 638. Unfair competition claims brought under Illinois law and IDTPA claims are reviewed under the same analysis that is employed for a Lanham Act trademark infringement claim. *Trans Union LLC v. Credit Research, Inc.*, 142 F.Supp.2d 1029, 1038 (N.D. Ill. 2001).

FHP explains in an affidavit that it or its predecessor in interest have had a

registered trademark in the phrase "O-Cedar Makes Your Life Easier" ("Registered Mark") since 1983. (Tillery Aff. Par. 5). FHP also alleges that it owns the common law rights in the phrases "O-Cedar Makes Your Life Easier!," and "Makes Your Life Easier!" and that FHP has a pending trademark registration application in regard to both phrases ("Unregistered Marks"). (Tillery Aff. Par. 6). Section 1114 governs registered trademarks and "creates a cause of action for a trademark 'registrant' when a defendant uses a registered trademark without consent." *Finance Inv. Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 531 (7th Cir. 1998); 15 U.S.C. § 1114. Section 1125 governs unregistered trademarks and "creates a cause of action for 'any person who believes that he or she is likely to be damaged' by a defendant's false designations of origin and misleading representations of fact that are likely to cause confusion as to origin or sponsorship." *Id.* (quoting in part Section 1114 and Section 1125).

<u>1. Registered Mark</u>

FHP has not offered any legal argument regarding the likelihood of success on the merits of its trademark infringement claim based upon its Registered Mark. Virtually the entire analysis of the likelihood of success on the merits in FHP's memorandum in support of the motion is devoted to its Section 1125 claim and its Unregistered Marks. The only references in the memorandum to the Registered Mark are in two footnotes, in which FHP states in a conclusory fashion that it has the

Registered Mark, that it is a protectable mark, and that "FHP believes that it is also likely to succeed in its claim of infringement of its registered mark . . . [because it] has become incontestable . . . ." (Mem. 1 n.1, 5 n.8). Such conclusory and unsupported statements are not sufficient for a plaintiff to show that it is entitled to the "extraordinary remedy" of injunctive relief. *See Lawson v. Hill*, 368 F.3d 955, 959 (7th Cir. 2004)(referring to an injunction as "an extraordinary remedy"); *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005)(same). An analysis specifically concerning FHP's Section 1114 claim would have been particularly appropriate, for instance, because certain presumptions arise in regard to marks that have been registered. *See Packman*, 267 F.3d at 638 (stating that "[o]nce a mark is registered, the Act affords a plaintiff one of two presumptions: (1) that her registered trademark is not merely descriptive or generic; or (2) that if descriptive, the mark is accorded secondary meaning"). Also, FHP's Registered Mark is not exactly the same as FHP's Unregistered Marks and, thus, FHP should have addressed the Registered Mark in FHP's analysis of its likelihood of success on the merits. Despite the distinctions regarding Section 1125 claims and Section 1114 claims, FHP has not provided any analysis in support of its Section 1114 claim. We also reiterate that FHP agreed with Defendants to waive their right to a preliminary injunction hearing, confining the court's review solely to the parties' briefs and accompanying exhibits, which means that FHP would not have intended to raise these arguments in a preliminary injunction hearing.

FHP addresses, for the first time in its reply brief, the alleged infringement of its Registered Mark. However, a party cannot raise new arguments in a reply brief and thereby deny the opposing party an opportunity to respond to the newly raised arguments. Accordingly, we strike such arguments as improper. *See Aliwoli v. Gilmore,* 127 F.3d 632, 635 (7th Cir. 1997)(quoting *United States v. Feinberg,* 89 F.3d 333, 340-41 (7th Cir. 1996) for the statement that "[t]he reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court"). Therefore, FHP has failed to show that there is even a negligible likelihood of success on its claim based upon an infringement of its Registered Mark.

## 2. Unregistered Marks

FHP argues that it has a strong likelihood of success on its trademark claim based on its Unregistered Marks. Infringement of an unregistered trademark is governed by Section 1125, and to prevail on such a claim a plaintiff must show that: "(1) the defendants have a protectable trademark; and (2) a 'likelihood of confusion' will exist as to the origin of the plaintiff's products." *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 435-36 (7th Cir. 1999)(stating that "[i]nfringement of unregistered marks is actionable under the Lanham Act, 15 U.S.C. § 1125(a)").

## a. Protectable Marks

A court must determine whether a party has a protectable right in a mark "on a case by case basis, considering the totality of the circumstances." *Johnny Blastoff, Inc.*, 188 F.3d at 433-34. A party can obtain "a protectable right in a trademark only through use of the mark in connection with its product." *Id.* In the instant action, FHP has not clearly differentiated in its arguments the extent that the Unregistered Marks have been used by FHP as opposed to its Registered Mark. Based upon FHP's assertions, it appears that at least some of the products being sold in stores across the country have born or now bear the Unrestricted Marks.

Defendants argue that FHP's Unregistered Marks are not protectable marks because they are descriptive marks. In general, if a mark is a descriptive mark, the mark is not "legally protected unless it has acquired secondary meaning." *Peaceable Planet, Inc. v. TY, Inc.*, 362 F.3d 986, 988 (7th Cir. 2004). In regard to the types of marks that would be categorized as descriptive, the Court in *Peaceable Planet, Inc.* provided a few examples. For example, the court stated that if a product was marketed under the phrase "All Bran," such a phrase would be a descriptive mark and the use of such a mark would unfairly "prevent all other producers of all-bran cereal from describing their product as all bran, [and] it would be difficult for competitors to gain a foothold in the market." *Id.* Another example offered by the court in *Peaceable Planet, Inc.* was a situation in which a party was selling a camel and used the term "Camel" in sales advertising. *Id.* In such a case, it would be hard for another party to try to advertise its own camel without using the term unless the

party resorted to language that would not be conducive to advertising, such as referring to its camel as a "Dromedary" or "Bactrian." *Id.*

Defendants argue that FHP's Unregistered Marks are descriptive marks. However, the word "O-Cedar" certainly does not describe the cleaning products at issue, nor does the phrase "Makes Your Life Easier!" describe the actual cleaning products, but rather explains how the usage of such products may affect the user's daily life.

In addition, even if FHP's marks were considered descriptive marks, FHP has presented sufficient evidence to show, at least for purposes of the preliminary injunction motion, that its marks have acquired a secondary meaning. The existence of a secondary meaning is shown by establishing that "it has been used so long and so exclusively by one company in association with its goods or services that the word or phrase has come to mean that those goods or services are the company's trademark." *Packman*, 267 F.3d at 641. FHP has presented evidence concerning the large number of products that bear its marks, the length of time that FHP has used the marks, and the fact that its products are sold in over 25,000 retail stores in all fifty states in the United States. FHP has also presented evidence concerning its sales volume of products that bear its marks. Thus, for the purposes of the preliminary injunction motion, FHP has provided sufficient evidence to indicate that its Unregistered Marks most likely have acquired a secondary meaning.

b. Likelihood of Confusion

FHP argues that there is a likelihood of confusion between its Unregistered Marks and the mark being used by Defendants. To determine whether there is a likelihood of confusion among consumers, a court should consider: "(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to 'palm off' his product as that of the plaintiff." *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 677-78 (7th Cir. 2001)(stating that "[t]he likelihood of confusion test is an equitable balancing test" and that "[n]o single factor is dispositive and courts may assign varying weights to each of the factors depending on the facts presented"). In general, the three most pertinent factors to consider are "the similarity of the marks, the defendant's intent, and actual confusion." *Id.*

1. Similarity of Marks

FHP's Unregistered Marks consist of the phrases "O-Cedar Makes Your Life Easier!" and "Makes Your Life Easier!" The marks allegedly used by Defendants that FHP complains about are "Real Simple" and "Life Made Easier." Simply because FHP's marks make references to *life* or *making life easier* does not mean that any mark that contains the words *life* and or *easier* is similar to FHP's marks. It

10

is only natural that advertising concerning household cleaning products would address the topic of how the products will make the user's life easier. FHP cannot preempt the entire field of marks that might make reference to that topic or claim the sole right to use the words "life" or "easier." FHP's rights to a proprietary interest in its marks do not mean that it can use them in such a manner as to exclude other competitors from the market. *See Peaceable Planet, Inc.*, 362 F.3d at 988 (stating that a party cannot use trademark protection to make "it difficult for competitors to gain a foothold in the market").

Also, as FHP itself acknowledges, its marks are usable as a jingle due to the fact that the words "O-Cedar" and "Easier" rhyme. (Compl. Par. 11)(Tillery Aff. Par. 7). In contrast, the words "Real Simple" do not rhyme with the word "easier" or any other word in the mark used by Defendants. In addition, we note that the presentation of FHP's marks and Defendants' mark differs. For instance in some of the exhibits provided by the parties, FHP places the words O-Cedar in white print, inside of a triangle box surrounded by dark coloring. (Mem. Ex. 1-B, Ans. Ex. B). Defendants, on the other hand, have placed the phrase "Real Simple" in blue and orange type and the phrase is not inside any type of box. In some of the examples provided by the parties of their products, FHP includes the phrase "Makes Your Life Easier" below or along side the "O-Cedar" phrase, whereas Defendants have placed the phrase "Life Made Easier" above the phrase "Real Simple." In addition, the word "O-Cedar" is written in upper-case and lower-case letters, whereas the

Defendants have written the phrase "Real Simple" in all capital letters. Therefore, based on the above, we conclude that there is no likelihood that FHP will be able to establish a similarity between FHP's Unregistered Marks and Defendants' mark.

## 2. Similarity of Products

Both FHP and Defendants display their marks on household cleaning products, such as mops and brooms. Thus, there are some similarities between the products. However, we note that the packaging, pricing, and presentation of the products are not similar. FHP uses a different color scheme than Defendants and Defendants have displayed their products in a different manner than FHP.

## 3. Area and Manner of Concurrent Use

Defendants do not dispute that their products are being sold in the same stores and to the same potential customers as FHP's products. Therefore, FHP has shown that there is some overlap concerning the parties' product sales areas and manner of concurrent use. However, this alone does not show a likelihood of confusion. If the consumers in those stores decided to purchase Defendants' product because they preferred it over FHP's product and are not mislead into believing that Defendants' product is made by FHP, then there is no customer confusion.

## 4. Degree of Care Likely to be Exercised by Consumers

In evaluating the care likely to be exercised by consumers when purchasing the products at issue, "the court must consider both parties' potential consumers, because even those consumers who buy only [the plaintiff's] products and services could be confused as to the source of those products or services." *CAE, Inc.*, 267 F.3d at 682. FHP argues that since the majority of the household products sold by FHP and Defendants are inexpensive, consumers will not use a great deal of care in deciding which product to purchase. First, FHP acknowledges that the products at issue cost from $5.00 to $18.00. FHP may deem such daily expenditures as trivial, but FHP has failed to provide sufficient evidence to show that the majority of consumers would consider such sums more than a minimal amount to be expended without care or concern for the product that is received. Also, Defendants' products are actually sold at a higher price than FHP's products and thus consumers will logically use greater care before they would choose to purchase Defendants' product over FHP's product. In addition, even if the products could be deemed inexpensive, that alone is not sufficient to show that consumers would not use sufficient care in deciding which product to purchase.

### 5. Strength of FHP's Unregistered Marks

A court determines the strength of a trademark by assessing "the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *CAE, Inc.*, 267 F.3d at 684 (stating that

"[t]rademark law recognizes five categories of trademarks, in ascending order of distinctiveness: generic, descriptive, suggestive, arbitrary and fanciful"). FHP has provided certain evidence that shows that it has used its Registered Mark in advertising for over thirty years and that FHP's products are sold in a large number of retail stores, which indicates that its Unregistered Marks are strong as well. However, it is unclear from FHP's submissions the extent to which FHP has used or is using its Unregistered Marks.

   6. Whether Actual Confusion Exists

A plaintiff is not required to support the actual confusion factor with "evidence of actual confusion, but must provide some type of evidence." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1045 (7th Cir. 2000). In the instant action, FHP has not provided evidence that would indicate that there would be any actual confusion caused by Defendants' use of its mark. Although FHP is not required to prove that actual confusion has occurred, FHP must present some evidence in regard to this factor and FHP has not done so. FHP complains that it should not be required to produce such evidence "at this early stage of" the litigation, but such an assertion is without merit because the factor at issue is part of the analysis for a preliminary injunction that necessarily is addressed in the early stages of litigation. (Mem. 9).

## 7. Intent of Defendants to 'Palm Off' Their Product

FHP has failed to produce any evidence showing that Defendants intended to "palm off" their products as FHP's products. FHP argues that Defendants had constructive knowledge of FHP's marks. However, even if Defendants knew or should have known of FHP's marks, Defendants' mark is not similar to FHP's marks and thus there is no reason to conclude that Defendants intended to portray their products as FHP's products.

FHP also claims that Defendants' intent to "palm off" their products is shown by the fact that "Defendants had an entire universe of potential slogans from which to choose, yet they selected a  confusingly similar to FHP's marks for their new line of cleaning tools." (Mem. 9). First, FHP is incorrect in its assertion that Defendants' mark is confusingly similar to FHP's marks. Second, although FHP makes reference to an "entire universe of potential slogans" that was available to Defendants, it is FHP, through its attempted claim over generic concepts regarding making a consumer's life easier, that is seeking ownership over the potential "universe" of slogans that should be available to FHP's competitors. Thus, there is a complete absence of evidence that would show that Defendants intended to "palm off" their products as those that were made by FHP. Therefore, based upon all of the above, we conclude that FHP has not shown even a negligible likelihood of success on the merits on its trade infringement claims (Counts I and II), the IDTPA claim (Count III), and the common law unfair competition claim (Count IV).

B. Dilution Claim (Count V)

FHP argues that it has a strong likelihood of success on its dilution claim. In order to prevail on a Lanham Act dilution claim, a plaintiff must establish: "(1) that the mark is famous; (2) that [the defendant] adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 811-12 (7th Cir. 2002)(stating that "[d]ilution differs from trademark infringement; it does not require a showing of consumer confusion as to source"). A court may determine the likelihood of dilution by assessing "the marks' similarity and the senior 's strength." *Id.* at 812. We also note, as a preliminary matter, that Defendants concede that they use their mark in commerce and for commercial purposes.

1. Whether the Marks Are Famous

_____ A court should consider factors such as the following in determining whether a mark is "distinctive and famous:"

> (A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods and services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade of the mark's owner and the

person against whom the injunction is sought; (G) the nature and extent of use of the same or similar marks by third parties; and (H) whether the mark is federally registered . . . .

*Id.* (quoting 15 U.S.C. § 1125(c)(1)).  FHP has failed to provide any arguments regarding the above eight factors.  FHP merely states in a conclusory fashion that "[f]or all the reasons discussed *supra*, these factors favor a finding of fame here." (Mem. 12).  However, FHP is the movant seeking a preliminary injunction, which, as is mentioned above, is an "extraordinary remedy." *Lawson*, 368 F.3d at 955. FHP must do more than vaguely point to the first twelve pages of its memorandum and ask the court to search for facts and evidence that may support its position.  FHP has not pointed to sufficient evidence for the court to determine whether FHP's marks are "distinctive and famous."  Even if FHP was able to point to sufficient evidence to show that its marks are famous, FHP has failed to show that Defendants adopted FHP's marks after they became famous.

        2. Dilution of a Mark

        The dilution of a mark is defined as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of – (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception."  15 U.S.C. § 1127. First, as is explained above, there has not been a showing by FHP that its marks are famous.  Second, FHP's only justification for its position that there is dilution of its

marks is that Defendants' mark is similar to FHP's marks, which, as is explained above, is not accurate based upon the record before the court. Therefore, FHP has not shown that there is dilution of its marks by Defendants and, based on all of the above, FHP has failed to even show a negligible likelihood of prevailing on the merits on its dilution claim.

_____

### C. Contributory Infringement Claim (Count VI)

FHP has brought a claim against Kaminstein d/b/a Casabella for contributory trade infringement. However, similar to FHP's Section 1114 claim, FHP has provided no analysis to support its position that it is likely to prevail on the merits of its contributory infringement claim. The only reference to the claim is in a footnote of FHP's memorandum, in which FHP states that "Time has intentionally induced Casabella to infringe FHP's mark MAKES YOUR LIFE EASIER!' by licensing Casabella to use 'LIFE MADE EASIER' for identical products." (Mem. 5 n. 7). However, FHP, as the movant, must do more than offer a conclusory statement in a footnote to support its request for a preliminary injunction. Therefore, FHP has failed to show even a negligible likelihood of success on the merits of its contributory infringement claim.

### II. No Adequate Remedy at Law and Irreparable Harm

FHP argues that it has no adequate remedy at law for the potential harm that

may result from Defendants' usage of its mark and that FHP will suffer irreparable harm if the preliminary injunction is not issued. In regard to trademark dilution or infringement claims, there is a presumption that there is a threat of "irreparable injury for which there is no adequate remedy at law." *AM General Corp.*, 311 F.3d at 805. In the instant action, FHP is alleging that FHP's goodwill and the value of its marks are potentially in jeopardy if it is found that Defendants are liable in this action and that it may be impossible to quantify the appropriate damages or determine appropriate relief after the culmination of this action. Therefore, FHP has sufficiently shown that there is no adequate remedy at law and potential irreparable harm.

III. Harm to Parties

FHP argues that if the court does not enter a preliminary injunction, there will be consumer confusion regarding the source of Defendants' product and lost sales to FHP. As is explained above, it is highly unlikely that there would be any such customer confusion. Defendants, on the other hand, would be significantly harmed if the court entered a preliminary injunction and FHP failed to ultimately prevail on the merits of its claims. If an injunction were entered, Defendants' reputation would be damaged and Defendants would lose goodwill. In addition, a significant amount of the time and money invested in the development of Defendants' products and marketing would be negated. Defendants contend that they are currently attempting

to expand their business and find additional retailers that will sell their products.

If an injunction is entered, such retailers, that will be temporarily enjoined from accepting Defendants' goods, may deem Defendants to be unreliable and decide not to carry Defendants' goods in the future. Defendants contend that they are just starting to enter the market with their products and are thus in a precarious position, in which they need to secure stable retail clients and make a steady return on the up-front investments in their development and marketing. An injunction that would stop Defendants from pursuing their sales and marketing of their products during the pendency of this litigation could have disastrous effects on the permanent success of the products. Therefore, we conclude that the balancing of the harms heavily favors a denial of the motion for a preliminary injunction.

## IV. Public Interest

The public interest is supported by protecting the rights of trademark holders. However, the public interest is also protected by ensuring that trademark protection is not applied in such a broad fashion that it allows one party to inhibit the natural competition in the marketplace, from which the consumers ultimately benefit in the form of lower prices and higher-quality goods. *See MB Financial Bank, N.A. v. MB Real Estate Services, L.L.C.*, 2003 WL 21462501, at *21 (N.D. Ill. 2003)(stating that a preliminary injunction should not be used to prevent competition and agreeing with defendant regarding the public's interest in "free competition, low prices and an

absence of monopolies"). Therefore, we conclude that the public interest favors Defendants.

The Seventh Circuit has made it clear that a plaintiff is not entitled to a preliminary injunction merely based upon unfounded speculation regarding potential harm to the plaintiff. The court has specifically stated that "[a] preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved." *Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001). Therefore, keeping in mind that in considering whether to grant a preliminary injunction the court should attempt to "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit," we conclude that a preliminary injunction is not warranted in this matter and we deny FHP's motion for a preliminary injunction. *AM General Corp.*, 311 F.3d at 804.

## CONCLUSION

Based on the foregoing analysis, we deny FHP's motion for a preliminary injunction.


Samuel Der-Yeghiayan
United States District Court Judge


Dated:   April 18, 2006